# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN COTTILLION and BEVERLY ELDRIDGE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED REFINING COMPANY and the UNITED REFINING COMPANY PENSION PLAN FOR SALARIED EMPLOYEES, UNITED REFINING COMPANY RETIREMENT COMMITTEE, and JOHN and MARY DOES 1 to 10.<br><br>Defendants. | C.A. No.:<br><br>09-140E |

## CLASS ACTION COMPLAINT

### INTRODUCTION

Plaintiffs John Cottillion and Beverly Eldridge bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, on behalf of terminated vested participants in the United Refining Company Pension Plan for Salaried Employees, as amended and restated effective January 1, 1987 (the "Plan"), who are entitled to receive the full amount of their normal retirement benefit on their early retirement date without any actuarial reduction.

### PARTIES

1.   Plaintiff John L. Cottillion resides in this district in Warren County, Pennsylvania. At all relevant times, Mr. Cotillion was a participant in the Plan, a true and correct copy of which is attached as Exhibit A.

2. Plaintiff Beverly Eldridge resides in this district in Warren County, Pennsylvania. At all relevant times, Ms. Eldridge was a participant in the Plan.

3. Defendant United Refining Company (the "Company") is a wholly owned subsidiary of United Refining, Inc., it is incorporated under the laws of the Commonwealth of Pennsylvania and it has its business address at 15 Bradley St., Warren, PA 16365. The Company was the sponsor of the Plan. Upon information and belief, at all relevant times Lawrence A. Loughlin, the Company's vice-president of human resources and a full-time employee of the Company, was elected the secretary of the Retirement Committee. Under Section 14.01 of the Plan, he had responsibility for the day-to-day administration of the Plan and the Retirement Committee delegated other duties and responsibilities to him under Section 14.01 of the Plan. Therefore, the Company was a fiduciary of the Plan within the meaning of ERISA §§ 3(16), (21), 29 U.S.C §§ 1002(16), (21), because, acting through Mr. Loughlin, it had responsibility for, *inter alia*, the operation and administration of the Plan, and for communicating with the participants.

4. Defendant United Refining Company Pension Plan for Salaried Employees (the "Plan") is a defined benefits plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), located at 15 Bradley St., Warren, PA 16365.

5. Defendant United Refining Retirement Committee (the "Retirement Committee") is named as the Plan Administrator, under Section 14.01 of the Plan, and is a named fiduciary under the Plan, and its address is 15 Bradley St., Warren, PA 16365.

6. John and Mary Does 1-10 are additional Plan fiduciaries whose exact identities and fiduciary functions will be ascertained through discovery. The information and documents on which Plaintiffs' claims are based are solely within Defendants' possession and control.

Therefore, to the extent necessary and appropriate in light of discovery, Plaintiffs will amend the Class Action Complaint or seek leave to amend to add such other fiduciaries as defendants.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

8. Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because Plaintiffs reside in this District, Defendants do business and can be found in this District, and the Plan is administered in this District.

## FACTS

9. As salaried employees of the Company, Mr. Cottillion and Ms. Eldridge were participants in the Plan, as amended and restated effective January 1, 1987.

10. The Plan provided that participants could commence their retirement on an Early Retirement Date under Section 4.02:

> A Participant may retire on an Early Retirement Date which may be the month coincident with or following his 60th birthday and his completion of five (5) years of Vesting Service, provided that he informs the Committee at least three (3) months prior to such Early Retirement Date of his intention to retire early.

11. Upon information and belief, in Amendment No. 1, a copy of which is included in Exhibit B, attached hereto, Section 4.02 of the Plan was amended to clarify that "a Participant who has completed five (5) years of Vesting Service terminates his employment prior to attaining his 60th birthday; then such Participant shall be entitled to receive his Retirement Income pursuant to this section upon his attaining his 60th birthday."

12. The Plan set the date that a vested participant, including terminated vested participants, could retire and did not provide for an actuarial reduction for retiring at the Early Retirement Date.

13. Section 5.02 of the Plan provides that:

> The annual Accrued Retirement Income of a Participant as of any particular date shall be an amount computed in accordance with Section 5.01 hereof, based upon his Benefit Service and Average Compensation *determined on such date*.

(emphasis supplied).

14. Section 5.03 of the Plan provides that "A Participant who retires on an Early Retirement Date will receive his Accrued Retirement Income computed as of his Early Retirement Date commencing at the end of the month in which his Early Retirement Date occurs."

15. The Plan did not contain an actuarial reduction for a participant who commenced his Retirement Income at an Early Retirement Date rather than at Normal Retirement Date.

16. Thus, at age 60, a participant with five years vesting service was eligible to retire and receive his Accrued Retirement Income, and such retirement was an Early Retirement under the Plan.

17. Under Section 7.01 a Participant was "entitled to a deferred vested Retirement income if he is credited with at least five (5) years of Vesting Service at the time of his employment termination."

18. Under Section 7.02 "The amount of a deferred vested Retirement Income to a Participant who satisfies the requirements of Section 7.01 shall be determined in accordance with the provisions of Section 5.03, based on the Participant's Benefit Service and Average Compensation at the time of employment termination. The form and payment of a Participant's deferred vested retirement income shall be determined and made in accordance with the provisions of Article VI as though such terminated Participant had remained in the employment of the Company until reaching his Normal Retirement Date."

19. In other words, terminated vested participants were entitled to receive their Retirement Income at their Early Retirement Date, rather than at their Normal Retirement Date, without actuarial reduction.

20. The persons responsible for the administration of the Plan, as amended and restated effective January 1, 1987, interpreted and administered the Plan as not containing an actuarial reduction for commencing one's Retirement Income at an Early Retirement Date rather than at Normal Retirement Date and for terminated vested participants to enjoy that same right.

21. In Amendment No. 2, effective February 1, 1996, a copy of which is included in Exhibit B, attached hereto, Section 4.02 of the Plan was amended to provide that:

> A participant may retire on an Early Retirement Date which may be the month coincident with or following his 59-1/2 birthday and his completion of five (5) years of Vesting Service, provided that he informs the Committee at least three (3) months prior to such Early Retirement Date of his intention to retire early.

22. Thus, the 1996 Amendment lowered the date that on which a participant could commence an Early Retirement, but still did not provide for any actuarial reduction of the benefit could be taken on the early retirement date.

23. It was not until March 4, 2003, that the Plan was amended and restated effective January 1, 2002, to modify the early retirement provisions to provide in a new Section 5.4 concerning Termination of Vested Participant. That section provides that a terminated participant who elected to have his retirement income commence prior to his normal retirement date would receive an "amount equal to his Retirement Income on his Normal Retirement Date, actuarially reduced to reflect the earlier starting date thereof."

24. The language that provides for an actuarial reduction did not appear in any previous statement of the Plan.

5

25. Defendants did not furnish Plaintiffs or members of the class a summary plan description, or any other notification of the material modification in the early retirement provisions of the Plan, described in paragraph 23 above, as required by ERISA §§ 102, 104, 29 U.S.C. §§ 1022, 1024.

26. Until 2005, and even after the 2002 amended and restated Plan, the persons responsible for the administration of the Plan continued to interpret and administer the Plan as not containing an actuarial reduction for commencing one's Retirement Income at an Early Retirement Date rather than at Normal Retirement Date and for terminated vested participants to enjoy that same right.

27. Plaintiff Cottillion was employed by the Company from 1960 to 1989, and was a participant in the Plan.

28. When he terminated his employment with the Company in 1989 at the age of 54, he was entitled to a vested pension under the Plan.

29. At the time that Mr. Cottillion terminated his employment, he received a form letter, dated August 7, 1989, a copy of which is attached as Exhibit C, which was signed by United Refining Company, Lawrence A. Loughlin, For the Retirement Committee.

30. Consistent with the terms of the Plan, amended and restated effective January 1, 1987, the August 7, 1989 letter from Defendants advised Mr. Cottillion that "as a Pension Plan participant with a vested interest," he would be eligible for a deferred retirement benefit from the Plan and that he could elect to have his monthly retirement benefit in the amount of $ 573.70 to begin at anytime after reaching age 60 in October, 1995.

31. Along with the August 7, 1989 letter, he received a copy of an Application for Commencement of Vested Benefit Form No. 4, which he completed and returned to the Retirement Committee.

Case 1:09-cv-00140-CB   Document 1   Filed 06/12/09   Page 7 of 15
Case 1:05-mc-02025   Document 92   Filed 06/12/2009   Page 7 of 15

32. On information and belief, all other salaried employees who were participants in the Plan, as amended and restated effective January 1, 1987, with a vested interest and who terminated their employment with the Company received a letter identical in form to Exhibit C, reflecting the terminated employee's benefit amount and age.

33. In October 1995, Mr. Cottillion commenced his monthly retirement benefit in the amount of $573.70 at the age of 60.

34. At that time, he also received a Pension Plan Record, which confirmed that the amount of his pension would be $573.70.

35. Mr. Cottillion continued to receive a monthly retirement benefit of $573.70, until he received from Defendants a letter dated June 15, 2006, a copy of which is attached as Exhibit D, which was signed by the Plan, Lawrence A. Loughlin, For the Retirement Committee.

36. The letter dated June 15, 2006 states that pension benefits paid to terminated vested participants prior to their normal retirement age of 65 years must be actuarially reduced due to the earlier payment date and that his monthly benefit which began on November 1, 1995 at age 60 should have been $306.58.

37. The June 15, 2006 letter also notified Mr. Cottillion that:

Beginning on July 31, 2006, your monthly pension benefit payment will stop and you will not receive any future payments. Additionally, in order to recover excess payments, you should repay the Plan $14,475.55 . . .

38. In July 2006, Mr. Cottillion appealed the determination set forth in the June 15, 2006, letter, but he did not receive a written determination of his appeal.

39. Defendants acted to stop Mr. Cottillion's monthly pension statements, along with the pension statements of all terminated vested participants in the Plan who commenced early retirement benefits prior to their normal retirement age.

40. On information and belief, all terminated vested participants in the Plan who vested under the January 1, 1987 Plan and who commenced retirement benefits prior to their normal retirement age received a letter identical in form to Exhibit D, reflecting the amount the vested participant had received to that time.

41. In promising and payment of benefits to terminated vested participants as of their Early Retirement Date without an actuarial reduction, Defendants recognized by their administration and conduct that the Plan, by its terms, did not contain any actuarial reduction for Retirement Income beginning on an Early Retirement Date for the terminated vested participants.

42. Plaintiff Eldridge was employed by the Company from 1986 to 1996, and was a participant in the Plan.

43. When she terminated her employment with the Company in 1989 at the age of 46, she was entitled to a vested pension under the Plan.

44. Even though Ms. Eldridge was not yet eligible to commence her early retirement, she received from Defendants a letter dated August 17, 2005, a copy of which is attached hereto as Exhibit E, informing her, contrary to earlier communications, that "you may elect to begin your pension benefit on the first day of any month following your age 59-1/2 birthday . . . . If you elect to receive your pension benefit before age 65, the amount you receive will be adjusted to reflect the earlier starting date." The August 17, 2005 letter stated that Defendants' records indicate that Ms. Eldridge was eligible to draw a reduced pension as of December 1, 2009.

45. On information and belief, all terminated vested participants in the Plan who had not yet commenced retirement benefits prior to their normal retirement age received a letter identical in form to Exhibit E, reflecting the date that the vested participant was eligible to commence his or her pension.

8

46. All administrative remedies have been exhausted and/or any further attempts to exhaust administrative remedies would be futile.

## CLASS ACTION ALLEGATIONS

47. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The requirements of Rule 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) are satisfied with respect to the class defined herein.

48. The class consists of the following:

All terminated vested participants in the United Refining Company Pension Plan for Salaried Employees, as amended and restated effective January 1, 1987 who completed five years of service prior to January 1, 2002.

49. Plaintiffs estimate that there are approximately 150 class members. The exact number and identification of these persons can be determined from the records maintained or controlled by Defendants. The number of class members is so large that joinder of all its members is impracticable.

50. There are questions of law and fact common to the class, including at least the following:

   a. Whether the Plan from January 1, 1987 until some after March 4, 2003, provided that Plan participants with 5 or more years of vesting service were entitled to commence a monthly retirement benefit at their Early Retirement Date without actuarial reduction;

   b. Whether Defendants acted contrary to the terms of the Plan in stopping payments to members of the class who had begun to receive their monthly retirement benefit;

   c. Whether Defendants failed to furnish Plaintiffs and members of the class a summary plan description, or any other notification of a material modification in the terms of the Plan, as required by ERISA §§ 102, 104, 29 U.S.C. §§ 1022, 1024, that retirement benefits to terminated employees at their Early Retirement Date were subject to actuarial reduction to account for the earlier date;

   d. Whether Defendants violated their ERISA fiduciary duties through their conduct;

      e.      Whether Plaintiffs and members of the class are owed additional benefits under the terms of the Plan;

      f.      Whether Plaintiffs and members of the class are entitled to declaratory relief to clarify their rights to future benefits under their plans; and

      g.      Whether Plaintiffs and members of the class are entitled to obtain injunctive and other relief to remedy harms from the conduct alleged.

51. Plaintiffs' claims are typical of the class. Their claims are brought under ERISA, which imposes a uniform standard of conduct on plan fiduciaries including a duty to uniformly administer and interpret common plan language.

52. Plaintiffs will fairly and adequately protect the interests of the class. They have no interests antagonistic to the claims of the class and have retained competent counsel.

53. Stember Feinstein Doyle & Payne, LLC, will fairly and adequately represent the interests of the class and satisfy the requirements of Fed. R. Civ. P. 23(g) in that the firm has extensive experience litigating class actions, particularly ERISA class actions in federal courts, it has investigated these claims and reviewed plan documents, participant communications and other documents prior to filing this action and are advancing the costs of the litigation.

54. Because of the uniform standards of conduct imposed by ERISA, the prosecution of separate actions by individual members of the class would create a risk of: (i) inconsistent adjudications that would establish incompatible standards of conduct for Defendants, and (ii) adjudications that would be dispositive of the interests of non-party class members or substantially impair such non-party class members' ability to protect their interests.

55. Defendants have acted or refused to act on grounds generally applicable to the class as a whole, thereby making appropriate final injunctive relief, declaratory relief or other relief with respect to the class as a whole.

56. The common issues outlined above predominate over any issues affecting only individual members of the class and a class action is superior to any other method for the fair and efficient adjudication of this controversy.

57. There are no difficulties likely to be encountered in the management of a class action in light of the uniform standard of conduct ERISA imposes on plan fiduciaries and the common plan language at issue.

## COUNT I
## CLAIM FOR BENEFITS AGAINST ALL DEFENDANTS

58. Plaintiffs incorporate by reference the allegations contained in the previous paragraphs of this Complaint as if set forth herein.

59. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) provides that participants or beneficiaries may bring a civil action to recover benefits due under the terms of their Plan.

60. The Plan, as amended and restated effective January 1, 1987, provides that Plan participants with 5 or more years of vesting service are eligible for a deferred retirement benefit from the Plan and could elect to have their monthly retirement benefit at their Early Retirement Date without actuarial reduction to account for the earlier date.

61. The unreduced Early Retirement pension benefit was available to terminated vested participants.

62. Defendants acted contrary to the terms of the Plan, as amended and restated effective January 1, 1987, in stopping payments to Plaintiff Cottillion and members of the class who had begun to receive their monthly retirement benefit and in refusing to commence monthly retirement benefits, without actuarial reduction, to members of the class who reached their Early Retirement Date.

63. Defendants acted contrary to the terms of the Plan, as amended and restated effective January 1, 1987, in notifying Plaintiff Eldridge and members of the class who accrued

11

benefits under the Plan and were vested, but who had not yet commenced monthly retirement benefits that if they elected their pension benefit before age 65, the amount received would be adjusted to reflect the earlier starting date.

64. Plaintiffs and members of the class are entitled to recover the benefits due to them, that is, their retirement benefits at their Early Retirement Date without actuarial reduction.

## COUNT II
## CLAIM FOR DECLARATORY RELIF BENEFITS AGAINST ALL DEFENDANTS

65. Plaintiffs incorporate by reference the allegations contained in the previous paragraphs of this Complaint as if set forth herein.

66. ERISA provides that participants or beneficiaries may bring a civil action to enforce their rights under the terms of the Plan, to clarify their rights to future benefits under the terms of the Plan, or to obtain other appropriate equitable relief to enforce any provisions of the Plan. ERISA §§ 502(a)(1)(B), 502(a)(3), 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3).

67. Through this Count, Plaintiffs and the class seek: (i) a declaration that the Plan, as amended and restated effective January 1, 1987, provides a retirement benefit payable at the Early Retirement Date which was not actuarially reduced to participants who completed five years of service prior to January 1, 2002; (ii) to enforce their right to have their retirement benefits paid without actuarial reduction; (iii) to clarify their right to have future retirement benefits paid without actuarial reduction; (iv) to enjoin Defendants from applying an actuarial reduction in calculating and administering retirement benefits; and (v) to obtain other appropriate equitable relief.

## COUNT III
## BREACH OF FIDUCIARY DUTY AGAINST
## THE COMPANY AND THE COMMITTEE, and DOE DEFENDANTS

68. Plaintiff incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if set forth herein.

69. Defendants are fiduciaries and, to the extent that they explained plan benefits to their employees, they acted in a fiduciary capacity.

70. Under ERISA § 404, 29 U.S.C. § 1104, fiduciaries are required to "discharge their fiduciary duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries and . . . (D) in accordance with the documents and instruments governing the plan . . . ."

71. Fiduciaries also have statutory disclosure obligations, set forth in ERISA §§ 101, 102, 29 U.S.C. §§ 1021, 1022, which include the duty to furnish a SPD, which must be sufficiently accurate and comprehensive to reasonably apprise participants and beneficiaries of their rights and obligations under the plan and which shall not have the effect of misleading, misinforming or failing to inform participants and beneficiaries.

72. Fiduciaries also have a duty not to misrepresent material information. This duty is the core of a fiduciary's responsibility. A misrepresentation rises to a material level if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision.

73. Defendants breached their fiduciary duties to Plaintiffs and members of the class in setting forth in informing Plaintiffs and members of the class that they were eligible for a deferred retirement benefit from the Plan and could elect to have their monthly retirement benefit at their Early Retirement Date without actuarial reduction to account for the earlier date, and then contrary to the foregoing representations and disclosures, stopping payments to members of the class who had begun to receive their monthly retirement benefit and in refusing to commence monthly retirement benefits, without actuarial reduction, to members of the class who reached Early Retirement Age.

13

74. Pursuant to ERISA § 502(a)(3), Plaintiffs and members of the class are entitled to appropriate equitable relief to redress Defendants' conduct.

## COUNT IV
## VIOLATION OF ERISA § 204(g) AGAINST THE COMPANY

75. Plaintiff incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if set forth herein.

76. ERISA § 204(g), 29 U.S.C. § 1054(g), provides: "The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan."

77. In applying the 2002 Plan amendments to reduce the accrued benefits of Plaintiffs and members of the Class, the Company violated ERISA § 204(g).

78. Pursuant to ERISA § 502(a)(3), Plaintiffs and members of the class are entitled to appropriate equitable relief to redress Defendants' violation of ERISA § 204(g).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and the class prays for relief as follows:

a. The certification of this action as a class action pursuant to Fed. R. Civ. P. 23 with Plaintiffs as class representatives and the appointment of the undersigned attorneys as counsel for the class;

b. A declaration that Plaintiffs and members of the class are entitled to recover the benefits due to them, to enforce their right to have their early retirement benefits calculated without actuarial reduction, and to clarify their rights to have future benefits calculated without actuarial reduction.

c. An injunction or other equitable relief requiring Defendants to award to Plaintiffs and members of the class the benefits owed to them;

d. Disgorgement of any unjust enrichment;

e. Prejudgment interest on all amounts recovered at the maximum rate allowable by law;

f.  An award to Plaintiffs and the class of the expenses of this suit, including costs, reasonable attorneys' fees and expert fees, and other disbursement;

g.  In addition and/or in the alternative, all relief to which Plaintiff and the members of the class may be entitled under the facts and law, however denominated or labeled, pursuant to Fed. R. Civ. P. 54(c) or otherwise; and

h.  Such other and further relief as this Court may deem just, equitable and proper.

Respectfully submitted,

/s/ Tybe A. Brett
Tybe A. Brett, Esquire
PA I.D. 30064
tbrett@stemberfeinstein.com
Ellen M. Doyle, Esquire
PA I.D. 21854
edoyle@stemberfeinstein.com
Joel R. Hurt, Esquire
PA I.D. 85841
jhurt@stemberfeinstein.com

STEMBER FEINSTEIN DOYLE &
PAYNE, LLC
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219
Tel:  (412) 338-1445

*Attorneys for Plaintiffs*