IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN COTTILLION, *et al.*, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>  v.<br><br>UNITED REFINING COMPANY, *et al.*,<br><br>        Defendants. | Civil Action No. 09-140E<br><br>Judge Cathy Bissoon |

# MEMORANDUM AND ORDER

## I. MEMORANDUM

For the reasons that follow, Plaintiffs' Motion for Class Certification (Doc. 192) will be granted, Defendants' Motion for Judgment on the Pleadings (Doc. 194) will be granted, and Plaintiffs' Motion Proposing Final Remedy (Doc. 203) will be granted in part and denied in part.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs John Cottillion ("Cottillion") and Beverly Eldridge ("Eldridge") (collectively, "Plaintiffs") are former employees of the United Refining Company ("United Refining") who participate and have vested interests in the United Refining Pension Plan for Salaried Employees ("the Plan"). *See* Cottillion v. United Refining Co., 2013 WL 1419705, *1 (W.D. Pa. Apr. 8, 2013). Cottillion and Eldridge are referred to by the Plan as "terminated vested participants" because their employment with United Refining ended after they had satisfied the Plan's vesting requirement, but prior to the "Early Retirement Date." *Id*.

Prior to 2005, the Plan administrator consistently interpreted the relevant Plan documents as providing unreduced early retirement benefits for terminated vested participants such as Cottillion and Eldridge. *Id*. at *2-4. In 2005, however, the Plan administrator began issuing letters to terminated vested participants informing them that their prior benefits calculations had been incorrect and that their monthly pension amounts should, in fact, have been actuarially reduced. *Id*. at *4-6. Consistent with this new interpretation of the Plan, the Plan administrator petitioned the Internal Revenue Service ("IRS") to allow the Plan to recoup the purported overpayments to members of the class. *Id*. Cottillion and Eldridge responded by filing the instant action asserting: a claim for benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); a claim for declaratory relief under §§502(a)(1)(B), 502(a)(3), 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3); a breach of fiduciary duty claim pursuant to § 404, 29 U.S.C. § 1104; and a claim alleging a violation of ERISA's anti-cutback provision, § 204(g), 29 U.S.C. §1054(g)(2).

On April 8, 2013, District Judge Sean J. McLaughlin issued a Memorandum Opinion and Order granting summary judgment in favor of Plaintiffs on their anti-cutback claims and dismissing the remaining claims without prejudice. *Id*. at *15. In that Opinion, the Court concluded that the Plan administrator's prior interpretation of the Plan as providing unreduced early retirement benefits had produced an "accrued benefit" within the meaning of ERISA Section 204(g)(2). *Id*. at *12 (citing 29 U.S.C. § 1054(g)(2)). Consequently, according to Judge McLaughlin, the Plan administrator's reinterpretation of the Plan in 2005 and 2006 to eliminate that benefit ran afoul of ERISA's anti-cutback rules. *Id*.

Plaintiffs now seek to certify a class consisting of all terminated vested participants who, like Cottillion and Eldridge, vested under either the 1980 or 1987 Plan Documents and accrued a

right to unreduced early retirement benefits. The putative class consists of approximately 30 individuals who, like Cottillion, already have begun receiving unreduced monthly benefits, and approximately 150 individuals who, like Eldridge, have not yet elected to commence receiving benefits payments. *See* Libman Report (Doc. 203-1). Plaintiffs also seek to clarify and reduce to final judgment those remedies appropriately flowing from Judge McLaughlin's summary judgment ruling. For their part, Defendants oppose each of the instant Motions and further request that the Court dismiss with prejudice the three counts of the Amended Complaint that Judge McLaughlin declined to reach.

**ANALYSIS**

    *A.*    *Motion for Class Certification*

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs have moved to certify the following settlement class:

> All terminated vested participants in the United Refining Company Pension Plan for Salaried Employees ("Plan"), who were employed by United Refining Company at any time between January 1, 1987 and March 18, 2003, and their beneficiaries under the Plan.

*See* Plaintiffs' Motion for Class Certification (Doc. 192).

In order to warrant certification, a class action proponent must satisfy the threshold requirements of Fed. R. Civ. P. 23(a) and demonstrate that the action is maintainable under one of the subsections of Rule 23(b). Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

> and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four threshold requirements commonly are referred to as numerosity, commonality, typicality and adequacy of representation. *See, e.g.,* Bernhard v. TD Bank, 2009 WL 3233541, *3 (D. N.J. 2009).

### 1. **Numerosity**

The first element, numerosity, requires that "the class be so numerous that joinder of all class members is impracticable." Rule 23(a)(1). While there is no talismanic number required to satisfy numerosity, courts typically have held that classes of around 40 or more members are sufficient. *See* Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001) ("Generally, if the named plaintiff demonstrates that the potential number of plaintiffs exceed 40, the first prong of Rule 23(a) has been met."); *see also* Moore's Federal Practice ¶ 23.05[1], at 23-150 (1982) ("[W]hile there are exceptions, numbers in excess of forty, particularly those exceeding one hundred or one thousand have sustained the [numerosity] requirement."). Here, the class proposed by Plaintiffs includes approximately 178 proposed members, a number sufficient to meet the requirements of numerosity.

### 2. **Commonality**

The element of commonality is satisfied if "the class members have suffered the same injury and . . . the claim depends upon a common contention that is capable of class-wide resolution." *See* Savani v. Washington Safety Mgmt. Solutions, LLC, 2012 WL 3757239, *3 (D. S.C. Aug. 28, 2012) (*citing* Wal-Mart Stores, Inc. v. Dukes, -- U.S. --, 131 S. Ct. 2541 (2011)). In Wal-Mart, the United States Supreme Court addressed the commonality requirement

in the context of a sex discrimination suit alleging that 1.5 million current and former female employees of Wal-Mart stores had been systematically disfavored for promotions and pay as compared to male co-employees. *Id*. at 2547. The Court held that the commonality requirement had not been satisfied because, although each female employee generally alleged that she had not been promoted because of her gender, the plaintiffs had failed to demonstrate that the allegedly discriminatory employment decisions were "glued" together by "[s]ignificant proof that [the] employer operated under a general policy of discrimination." *Id*. at 2253 (*quoting* Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 159 n.15 (1982)). The Court emphasized that "[w]hat matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. at 2551 (*quoting* Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L. Rev. 97, 132 (2009)). In other words, the common contention shared by the putative class must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

In the instant case, the Court concludes that a single common policy – the "cutback" – binds each of the putative class members' claims together. Prior to 2005, each member of the putative class was uniformly instructed that they would receive unreduced early retirement benefits upon reaching their early retirement date if they elected to enter into pay status at that time. When the Plan altered its position and announced that early retirement benefits should have been actuarially reduced, that decision also was universally applied to each putative class member in precisely the same fashion. Although the particular harm suffered by each Plaintiff as a result of that decision varies, the source of that harm – the legal determination by the Plan that the provision of unreduced benefits had been in error – is the same for each Plaintiff.

5

Unlike in Dukes, there is no suggestion in the record that individual departments, units, managers or plan administrators determined, on an individualized basis, whether or not a particular plaintiff was entitled to unreduced benefits. Rather, this lawsuit targeted a single decision that was universally applied and affected each putative class member in the same fashion.

Defendants heavily contest the commonality and typicality elements, noting the existence of several distinctions which, in their view, counsel against class certification. For example, they note that there are two versions of plan documents at issue (1980 and 1987), that one group of Plaintiffs (represented by Cottillion) has entered into pay status while another (represented by Eldridge) has not, and that various Plaintiffs might be subject to unique defenses (such as exhaustion). Each of these is insufficient to render the class unviable. As an initial matter, with respect to exhaustion, Judge McLaughlin already held that each Plaintiff was excused from exhausting their claims because it would be futile to do so. Cottillion, 2013 WL 1419705 at *14-15. Moreover, Judge McLaughlin granted summary judgment in favor of *both* named Plaintiffs despite the fact that Cottillion had vested under the 1980 Plan and had already entered pay status, while Estridge had vested under the 1987 Plan and had not yet begun to receive benefits payments. This holding provided the "common answer" required by Dukes to "drive the resolution of the litigation" by binding Plaintiffs together in a single class. *See id*. at 2551. In light of the common legal and factual issues between proposed class members, the element of commonality is satisfied here.

Recent caselaw concerning ERISA's anti-cutback provision supports this conclusion. In Savani, for example, the district court addressed the commonality requirement in the context of an anti-cutback claim as follows:

6

> Rule 23(a)(2) requires that the resolution of common questions affect all or a substantial number of the class members. *See Brown v. Nucor Corp.,* 576 F.3d 149, 153 (4th Cir.2009). As the Supreme Court recently clarified, in order to satisfy the commonality requirement, the plaintiff must demonstrate that the class members have suffered the same injury and that the claim depends upon a common contention that is capable of class-wide resolution. *See Wal–Mart Stores, Inc. v. Dukes,* -- U.S.--, 131 S. Ct. 2541, 180 L.Ed.2d 374 (2011).
>
> All of the claims of the [c]lass members arose from the same acts and conduct of [the d]efendants, namely [their] elimination of § 4.12(a) early retirement supplemental benefits. The theory of liability of each member is identical, *i.e.* [the d]efendants violated the . . . ERISA anti-cut back rule. 29 U.S.C. § 1054(g). The parties do not dispute that [the p]laintiffs' claim fulfills the commonality requirement. The court finds that the issue of whether there was a denial of supplemental benefits in violation of the anti-cut back rule is a common question of law applicable equally to [the p]laintiffs and all members of the [c]lass and [s]ubclass.

Savani, 2012 WL 3757239, *3. Similarly, in Mezuk v. U.S. Bank, 2011 WL 601653 (S.D. Ill. Feb. 11, 2011), the district court reached the same conclusion:

> There is clearly a common nucleus of operative facts and law at issue with respect to the putative classes. The [p]lan has engaged in a standardized course of conduct toward all members of the proposed classes by calculating the opening cash balance of each putative class member's account using the methodology set forth in the [p]lan. With respect to each calculation made under the same methodology, the legal issue is whether using this methodology complied with the anti-cutback and anti-discrimination provisions of ERISA.

Mezuk, 2011 WL 601653 at *6; *see also* Barnes v. AT&T Pension Benefit Plan, 273 F.R.D. 562, 569-70 (N.D. Cal. 2011) (allowing plaintiffs to amend the class definition in an anti-cutback case to include deferred annuitants in a class composed of lump-sum benefit recipients because defendant's construction of the plan documents was identical with respect to each group); Titus v. Burns & McDonnell, Inc. Employee Stock Ownership Plan, 2010 WL 3713666, *3

(W.D. Mo. Sept. 13, 2010) (certifying a class in an anti-cutback case because "[a]ll potential class members were ESOP participants whose ESOP accounts were affected by the [alleged cutback]"); Pender v. Bank of America Corp., 269 F.R.D. 589, 597 (W.D. N.C. Aug. 25, 2010) (finding commonality in an anti-cutback case based on the prevalence of issues common to the entire class).

### 3. **Typicality**

Somewhat overlapping the commonality requirement, the typicality element assesses whether "the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994). Typicality requires an inquiry into whether "the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Id*. at 57 (*quoting* Hassine v. Jeffes, 846 F.2d 169, 177 (3d Cir. 1988)). Although they are distinct factors under Rule 23(a), courts have noted that "[t]he concepts of commonality and typicality are broadly defined and tend to merge." *Id*. at 56. Thus, as with commonality, "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Id*. at 57 (citing De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983)). As discussed above, the legal theories shared between Plaintiffs and the prospective class members are identical, and there is nothing to indicate that the named Plaintiffs' interests are inconsistent with those of the prospective class. Thus, the typicality requirement is satisfied.

8

### 4. Adequacy of Representation

The final Rule 23(a) element, adequacy of representation, encompasses "two distinct inquiries designed to protect the interests of absentee class members." In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 148 F.3d 283, 312 (3d Cir. 1998). Specifically, the adequacy of representation inquiry "tests the qualifications of the counsel to represent the class" and "serves to uncover conflicts of interest between named parties and the class they seek to represent." Id. (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F3d 768, 800 (3d Cir. 1995) and Amchem Prods. v. Windsor, 521 U.S. 591, 594 (1997)). Based upon the qualifications set forth in Exhibit 1 to Plaintiffs' Motion for Class Certification (see Doc. 191-1), the Court concludes that class counsel is sufficiently qualified and experienced to represent the proposed class throughout this litigation.[1] Moreover, as discussed above, Cottillion and Eldridge share an identical interest with the proposed class members in correcting the anti-cutback violation that resulted from Defendants' decision to actuarially reduce their accrued early retirement benefits. See, e.g., Mezyk, 2011 WL 601653, *7 (concluding that plaintiffs were adequate class representatives because they "possess[ed] the same interest and suffer[ed] the same injury as the class members") (quoting East Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S. Ct. 1891 (1977)). As such, the Court concludes that Plaintiffs are adequate class representatives.

---

[1] Defendants do not contest the adequacy of class counsel's qualifications. See Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Doc. 210) at 9.

### 5.    Rule 23(b) Requirements

In addition to satisfying numerosity, commonality, typicality and adequacy of representation, a proposed class action suit also must satisfy one of the three Rule 23(b) subsections.  Rule 23(b) provides:

> (b) A class action may be maintained if Rule 23(a) is satisfied and if:
>
> (1)    prosecuting separate actions by or against individual class members would create a risk of:  (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2)    the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3)    the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b).  Here, Plaintiffs primarily seek certification of a mandatory class under sub-parts (b)(1) and/or (b)(2).  *See* Fed. R. Civ. P. 23(c)(2).

Rule 23(b)(1) is satisfied where separate actions by or against individual class members would risk establishing incompatible standards of conduct for party opposing the class or where individual adjudication would prejudice the class members themselves.  *See* Fed. R. Civ. P. 23(b)(1); Savani, 2012 WL 3757239, *4 (*citing* Zimmerman v. Bell, 800 F.2d 386, 389 (4th Cir. 1986)).  Application of this sub-section is most appropriate where the defendant is obligated to

treat all members of the class alike as a matter of law or other necessity.  *See* Amchem, 521 U.S. at 614.  As such, certification pursuant to Rule 23(b)(1) is "especially helpful in ERISA cases where a defendant provides unitary treatment to all members of a putative class and where litigation of some class members' rights could be implicated in suits brought by other class members."  Mezyk, 2011 WL 601653, *9 (*citing* Thomas v. SmithKline Beecham Corp., 201 F.R.D. 386, 396-97 (E.D. Pa. 2001)); Savani, 2012 WL 3757239, *4 (noting that "ERISA cases where plaintiffs challenge the computation of benefits are often certified under Rule 23(b)(1)(A)"); Pender, 269 F.R.D. at 598 (same).

In the instant case, it is clear that inconsistent adjudications with respect to different class members would establish incompatible standards of conduct for the Plan.  For example, if relief were granted in favor of some terminated vested participants and not others, the Plan would be faced with the impossible task of distributing benefits to similarly situated plan participants pursuant to two conflicting standards.  In order to avoid this impracticality and establish a single standard of conduct, consistent with the underlying goals of ERISA, class certification pursuant to Rule 23(b)(1) is appropriate.  *See, e.g.*, Thomas, 201 F.R.D. 396-97 (noting that ERISA obligates plan administrators to provide uniform treatment to similarly situated plan participants); Mezyk, 2011 WL 601653, *9 (same).

Certification similarly is warranted pursuant to Rule 23(b)(2) because "defendant's conduct . . . was generally applicable to the class and . . . final injunctive or declaratory relief with respect to the entire class [is] the appropriate remedy."  Mezyk, 2011 WL 601653, *9 (*citing* Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993)).  Courts routinely have certified classes pursuant to this sub-section where, as in the instant case, an ERISA plan administrator makes a uniform decision about administering the Plan as it applies

to the putative class members. *Id*. at *9-10; *see also* Pender, 269 F.R.D. at 599 (certifying a class pursuant to Rule 23(b)(2) where the plan administrator imposed an improper method of calculating benefits upon the entire class and where the appropriate remedy consisted primarily of declaratory relief).

In sum, Plaintiffs have satisfied all four provisions of Rule 23(a) and two provisions of Rule 23(b). Consequently, the Court concludes that certification of a mandatory class pursuant to Rule 23 is appropriate. However, in order to more accurately reflect the scope of Judge McLaughlin's prior summary judgment motion, the class definition should be amended to include:

> All terminated vested participants in the United Refining Company Pension Plan for Salaried Employees ("Plan"), who were employed by United Refining Company [and vested under either the 1980 or 1987 version of the Plan] at any time between January 1, 1987 and March 18, 2003, and their beneficiaries under the Plan.

*See* Plaintiffs' Motion for Class Certification (Doc. 192).

### B. *Remedy*

Having determined that class certification is warranted, the Court now turns to the issue of remedy. In their Motion Proposing Final Remedy, Plaintiffs essentially seek three types of relief. First, they seek a declaratory judgment stating that all class members have accrued an unreduced early retirement benefit under the 1980 or 1987 Plan Document and that Defendants' attempt to actuarially reduce this benefit violated ERISA. Similarly, they request that Defendants be enjoined from applying the improper actuarial reduction to any future payments of their early retirement benefits. Finally, for those class members who already have reached

their early retirement date, they seek monetary reimbursement in the form of equitable restitution and/or surcharge in order to restore the pension benefits that Defendants wrongfully withheld.

ERISA § 502(a)(3) authorizes a plan participant to bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" and to obtain other appropriate equitable relief . . . to redress such violations or [] to enforce . . . the terms of the plan." 29 U.S.C. § 1132(a)(3). It is well-established that § 502(a)(3)'s reference to "equitable relief" refers to "those categories of relief that were typically available in equity." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209-10 (2002). Such remedies include injunction, mandamus, restitution, surcharge, reformation and equitable estoppel. Mertens v. Hewitt Assoc., 508 U.S. 248, 257 (1993); CIGNA Corp. v. Amara, -- U.S. --, 131 S. Ct. 1866, 1878 (2011).

As an initial matter, Plaintiffs' request for declaratory and injunctive relief is readily granted. Such relief is well within the scope of available remedies under ERISA § 502(a)(3) and clearly is supported by the summary judgment ruling previously issued by Judge McLaughlin. *See, e.g.,* Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 53 (1987) (stating that available relief under ERISA § 502(a)(3) includes "a declaratory judgment on entitlement to benefits" and "an injunction against a plan administrator's improper refusal to pay benefits"); Cottillion, 2013 WL 1419705, *12-14 (concluding that Plaintiffs had established an accrued right to unreduced early retirement benefits and that Defendants' attempt to reduce that accrued right amounted to an anti-cutback violation); *see also* Pell v. E.I. Dupont De Nemours & Co. Inc., 539 F.3d 292, 305-08 (3d Cir. 2008) (affirming an injunction that required defendant to use a specific service date to re-calculate and pay pension benefits going forward); In re Unisys Corp.,

13

Retiree Medical Benefit "ERISA" Litig., 57 F.3d 1255, 1269 (3d Cir. 1995) (upholding an injunction restoring future benefits under an ERISA plan).

With respect to monetary relief, Plaintiffs seek reimbursement for employees who fall into several different groups. First, for those employees, such as Cottillion, who reached early retirement age and began receiving early retirement benefits prior to the cutback, all parties agree that equitable restitution and/or surcharge is appropriate in the amount of the difference between the unreduced benefits they should have been paid and the amount of the benefits payments they actually received, plus interest.[2]

For employees such as Eldridge, who have reached their early retirement age but have not yet applied for benefits, Plaintiffs seek monetary relief based upon their contention that each of these class members would have elected to commence receiving benefits upon reaching age 59½ had the Plan not improperly informed them that those benefits would be actuarially reduced. *See* Libman Report ¶¶ 10-11. According to Plaintiffs, "there is no economic incentive for a terminated vested participant to delay commencing an unreduced monthly benefit past his or her Early Retirement Date." *See* Plaintiff's Brief in Support of Motion Proposing Final Remedy (Doc. 203) at 12; Libman Report ¶ 11. Consequently, Plaintiffs contend that this group of individuals is entitled to compensation for the benefits that were wrongfully withheld from them, despite that they each elected not to commence receiving any benefits at that time. In the alternative, Plaintiffs request that Defendants be ordered to send an election form to each of these class members giving them the option to "immediately commence a benefit that is actuarially equivalent to the unreduced benefit they should have been eligible to receive at their Early

---

[2] The Court's determination as to the appropriate interest rate is set forth below.

Retirement Date, or . . . wait and receive the same benefit amount at age 65." *See* Plaintiff's Reply Brief (Doc. 219) at 10.

On balance, the Court concludes that an award of monetary relief for this group of participants would be entirely speculative. As noted by Defendants, Plaintiffs have failed to supply any evidence indicating that any or all of those class members elected not to commence receiving benefits on the basis of the cutback. Plaintiffs' position further is undermined by the fact that several of the plan participants within this group failed to apply for benefits even upon reaching age 65, at which time they would have been entitled to non-actuarially reduced benefits under any interpretation of the Plan. Rather than award restitution based upon the supposition of Plaintiffs' expert, the Court will adopt Plaintiffs' alternative request and order Defendants to provide each class member who has reached their early retirement date with the opportunity to immediately commence receiving an unreduced benefit if they choose to do so.

Finally, with respect to those employees who vested under the 1980 or 1987 version of the Plan but have not yet reached their early retirement date, the declaratory and injunctive relief awarded herein is sufficient. There is no need for the Court to direct specific payment amounts for such members when the Plan is perfectly capable of calculating their early retirement benefits, consistent with the language of the declaratory judgment order, at the time that those class members become eligible to commence receiving benefits.

One final issue pertaining to remedy concerns the appropriate rate of interest. It is well-settled that "interest is presumptively appropriate when ERISA benefits have been delayed." Fotta v. Trustees of the UMWA Health & Retirement Fund, 165 F.3d 209, 214 (3d Cir. 1998). Apropos to the instant dispute, Section 1.2 of the governing Plan Document provides that, when comparing two or more benefits under the Plan, "the assumed interest rate shall be seven

15

and one-half percent (7-1/2%), compounded annually." *See* Defs.' Ex. D (Doc. 215-04) at § 1.2. The Plan administrator utilized this 7.5% interest rate in the Plan's 2006 submission to the IRS to calculate the amount that the Plan intended to recoup from those terminated vested participants who allegedly had been overpaid prior to the cutback. *See* Libman Report ¶¶ 6-7. Plaintiffs suggest that the same rate should be utilized when returning those improperly recouped benefits to the affected Plan participants.

Defendants respond that the appropriate interest rate is the lesser one set forth in Section 1.2(c)(i) of the governing Plan Document. That section provides that, in situations where "single-sum cash settlements" are made pursuant to "Sections 6.6 and 11.6" of the Plan, the "annual rate of interest on 30-year Treasury securities as specified by the Internal Revenue Service . . . for the second month preceding the Plan Year in which the distribution is made" should be utilized. *See* Defs.' Ex. D (Doc. 215-04) at § 1.2(c)(i). Application of subsection 1.2(c)(i) would result in an interest rate of approximately 3.7%. *See* Altman Decl. (Doc. 212) ¶ 11.

After reviewing each of the pertinent subsections, the Court concludes that a rate of 7.5% is appropriate. Although the plain language of Section 1.2 would appear, by its own terms, to apply only when determining whether "two or more benefits" are of "equivalent value as determined actuarially," Defendants, in their corrective submission to the IRS, explained that "Plan Section 1.2 provides that a rate of 7.5% will be used when no other rate is specified." *See* Ex. C to IRS Submission (Doc. 203-4) at 3. Neither of the sections cross-referenced in Section 1.2(c)(i) concern the calculation of restorative payments to correct an improper benefit reduction; rather, section 6.6 addresses lump sum payments to participants who hold very small retirement accounts, and Section 11.6 addresses lump sum payments to participants in the event

that the Plan is terminated. *See* Defs.' Ex. D (Doc. 215-04) at §§ 6.6, 11.6. Consequently, the 7.5% default rate that applies "when no other rate is specified" is the appropriate rate here. *See* Ex. C to IRS Submission (Doc. 203-4) at 3. Indeed, as noted by Plaintiffs, it would be inequitable for Defendants to apply the 7.5% rate when attempting to recoup perceived overpayments to beneficiaries, but apply a much smaller rate when forced to restore those wrongfully recovered amounts.

### C. *Motion for Judgment on the Pleadings*

In Judge McLaughlin's summary judgment Order, the Court held that "Plaintiffs' anti-cutback claim provides a full and complete remedy for the violations alleged in the Amended Complaint." Cottillion, 2013 WL 1419705, *15. As such, the Court found it "unnecessary to address the alternate theories of recovery advanced in the Amended Complaint" and dismissed each of those remaining claims without prejudice. *Id*. Defendants now seek judgment on the pleadings and dismissal with prejudice as to each of those unaddressed claims.

By way of background, Count I of the Amended Complaint asserted a claim for benefits under ERISA Section 502(a)(1)(B). Count II asserted a claim for declaratory relief pursuant to ERISA Sections 502(a)(1)(B) and 502(a)(3). Count III asserted a claim for breach of fiduciary duty pursuant to ERISA Section 502(a)(3). With respect to each, Plaintiffs sought the same relief that they are entitled to receive pursuant to their anti-cutback claim, namely, a declaratory judgment and injunction establishing their right to unreduced early retirement benefits, and monetary relief in the form of restitution and/or surcharge.

It is well-settled that an ERISA plaintiff may not receive duplicative relief under both Section 502(a)(3) and Section 502(a)(1)(B). *See, e.g.*, Varity Corp. v. Howe, 516 U.S. 489, 515

17

(1996); Mondry v. Am. Family Mut. Ins. Co., 557 F.3d 781, 805 (7th Cir. 2009) (noting that "a majority of the circuits" have interpreted Varity as holding that "if relief is available to a plan participant under subsection (a)(1)(B), then that relief is unavailable under subsection (a)(3)"); Twomey v. Delta Airlines Pilots Pension Plan, 328 F.3d 27, 32 (1st Cir. 2003); Frommert v. Conkright, 433 F.3d 254, 269 (2d Cir. 2006) (same), *rev'd on other grounds*, 559 U.S. 506 (2010). Pursuant to this Memorandum and Order, Plaintiffs will receive full and complete relief for the violations alleged in the Amended Complaint. Consequently, any relief that could be awarded pursuant to Counts I-III would be entirely redundant and duplicative. Those claims, therefore, will be dismissed with prejudice.

Consistent with the foregoing, the Court enters the following:

## II. ORDER

It is hereby ORDERED that:

A. Plaintiffs' Motion for Class Certification (**Doc. 192**) is **GRANTED**. The following litigation class is certified pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(1) and (b)(2):

> All terminated vested participants in the United Refining Company Pension Plan for Salaried Employees ("Plan"), who were employed by United Refining Company and vested under either the 1980 or 1987 version of the Plan at any time between January 1, 1987 and March 18, 2003, and their beneficiaries under the Plan.

B. The Court hereby approves Plaintiffs John Cottillion and Beverly Eldridge as representative plaintiffs of the class pursuant to Rule 23(a)(3) and (a)(4).

C. The Court hereby appoints Tybe A. Brett, Ellen M. Doyle, Joel R. Hurt, and Feinstein Doyle Payne & Kravec, LLC as class counsel pursuant to Rule 23(g).

D. Plaintiffs' Motion Proposing Final Remedy (**Doc. 203**) is **GRANTED IN PART AND DENIED IN PART**, as set forth below.

E. Consistent with the Memorandum Opinion and Order issued by Judge Sean J. McLaughlin on April 8, 2013 (Doc.186), it is hereby declared that all members of the certified class had accrued an unreduced early retirement benefit under the 1980 and/or 1987 Plan Document and that Defendants' reinterpretation of the 1980 and 1987 Plan Documents in 2005 and 2006 as providing an actuarially reduced early retirement benefit violated the anti-cutback rules contained in ERISA § 204(g), 29 U.S.C. § 1054(g).

F. Defendants are enjoined from applying any actuarial reduction for early commencement to the unreduced early retirement benefits that class members accrued under the 1980 and/or 1987 Plan Documents.

G. With respect to those class members who have reached their early retirement date and have commenced receiving their benefits, judgment is entered for the difference between the amount of the unreduced benefit payments they should have been paid and the amount of the benefit payments they actually received, plus interest at 7.5 percent. The parties are directed to meet and confer to agree upon payment amounts for each of these class members and submit those amounts to the Court by **December 6, 2013**.

H. With respect to those class members who have reached their early retirement date but have not yet commenced receiving benefits, it is hereby **ORDERED** that Defendants must provide each class member so situated with the opportunity to immediately elect to commence receiving an unreduced benefit if they so choose.

I. The parties are ordered to meet and confer to determine the final composition of the certified class. The parties shall file a joint stipulation to the Court, by **December 6, 2013**, identifying the final composition of the class. Any disputes as to the composition of the class or the amount of restitution owed to any individual class member shall be submitted, in a joint report to the Court, by **December 6, 2013**.

J. Defendants' Motion for Judgment on the Pleadings (**Doc. 194**) is **GRANTED**, and Counts I, II and III of the Amended Complaint are **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

November 5, 2013                                  s\Cathy Bissoon                    
                                                  Cathy Bissoon
                                                  United States District Judge

cc (via ECF email notification):

All counsel of record