# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN COTTILLION, *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED REFINING COMPANY, *et al.*,<br><br>Defendants. | Civil Action No. 09-140 Erie<br><br>Judge Cathy Bissoon |

## MEMORANDUM AND ORDER

### I.   MEMORANDUM

This matter is before the Court upon the parties' submission of a joint report (Doc. 247) identifying the final composition of the certified class, the payment amounts owed to each member of that class, and any disputes remaining as to either of the foregoing. In addition, the following motions are pending: Plaintiffs' Motion to Clarify the Memorandum and Order Dated November 5, 2013 (Doc. 251); Plaintiffs' Motion to Strike (Doc. 252); Defendants' Cross-Motion for Attorneys' Fees (Doc. 254); and Defendants' Cross-Motion to Substitute Declaration (Doc. 260). For the reasons that follow, each of these motions will be denied. A final class certification order will be issued consistent with this memorandum opinion.

### A.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs John Cottillion ("Cottillion") and Beverly Eldridge ("Eldridge") (collectively, "Plaintiffs") initiated this action on June 12, 2009, alleging, *inter alia*, that Defendants had violated ERISA's anti-cutback provision, § 204(g), 29 U.S.C. § 1054(g)(2). (Doc. 1). On April 8, 2013, Judge Sean J. McLaughlin issued a memorandum opinion and order granting summary judgment in favor of Plaintiffs on their anti-cutback claim. Cottillion v. United

Refining Co., 2013 WL 1419705, *1 (W.D. Pa. Apr. 8, 2013). On November 5, 2013, this Court granted Plaintiffs' motion for class certification and certified the following class:

> All terminated vested participants of the United Refining Company Pension Plan for Salaried Employees ("Plan"), who were employed by United Refining Company and vested under either the 1980 or 1987 version of the Plan at any time between January 1, 1987 and March 18, 2003, and their beneficiaries under the Plan.

Cottillion v. United Refining Co., 2013 WL 5936368, *10 (W.D. Pa. Nov. 5, 2013). The Court directed the parties to "meet and confer to determine the final composition of the certified class" and to identify any disputes "as to the composition of the class or the amount of restitution owed to any individual class member." Id. at *11.

On January 14, 2014, the parties' submitted a joint report outlining their stipulations and disputes concerning final class composition and restitution. (Doc. 247). Specifically, the parties indicated that they had agreed to the following stipulations:

a. The parties stipulate that the 193 individuals listed in Joint Exhibit 1 (and their beneficiaries under the Plan) are members of the certified class; and

b. The parties stipulate to the payment amounts due under the Remedies Order as of December 31, 2013, for the 25 class members that are listed in Joint Exhibit 2.

(Doc. 247 at p. 1). However, the parties could not agree as to whether the following five individuals qualified as members of the certified class: Lisa Feeny, Charles Fields, Raymond Gutshall, Gayle Munson, and Stuart Upton. Id. at 2. The parties also disagreed as to the proper restitution amounts for the following five individual class members: Gary Berti, Janice Moore, Home Morrison III, Dennis Tuttle, and Stephen Widmer. Id.

2

B. **ANALYSIS**

   1. **Motion for Clarification**

"Although no Federal Rule of Civil Procedure specifically governs 'motions for clarification,' these motions are generally recognized and allowed by federal courts." Barnes v. District of Columbia, 289 F.R.D. 1, 13 (D.D.C 2012). "The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." Resolution Trust Corp. v. KPMG Peat Warwick, 1993 WL 211555, at *2 (E.D. Pa. June 8, 1993).

Here, Plaintiffs seek to "clarify" the Court's November 5, 2013 memorandum and order with respect to the relief awarded to class members who have reached their Early Retirement Date but who have not yet commenced receiving a benefit. The pertinent language in the memorandum stated that Defendants must "provide each class member who has reached their early retirement date with the opportunity to immediately commence receiving an unreduced benefit if they choose to do so." Cottillion, 2013 WL 5936368 at *8. The accompanying order similarly provided that, "[w]ith respect to those class members who have reached their early retirement date but have not yet commenced receiving benefits, it is hereby ORDERED that Defendants must provide each class member so situated with the opportunity to immediately elect to commence receiving an unreduced benefit if they choose to do so." Id. at *11. Plaintiffs urge the Court to interpret this language to require Defendants to provide such class members with an opportunity to immediately commence an *actuarially adjusted* benefit – that is, a benefit that includes an adjustment for the past payments that such class members could have received had they elected to commence receiving benefits at their early retirement date – rather than receiving only prospective relief.

3

Contrary to Plaintiffs' assertions, there is nothing ambiguous or vague about the Court's order. It simply requires Defendants to provide the class members at issue with the opportunity to begin receiving benefits immediately, even if they had previously elected to wait until a later date. Although Plaintiffs urge the Court to interpret this language to require an adjustment for past benefits that those participants elected not to receive, the Court has already determined that restitution for such class members "would be entirely speculative." Cottillion, 2013 WL 5936368 at *8. Consequently, there is nothing to clarify. *See, e.g.*, Wallace v. Powell, 2012 WL 2007294, at *1-2 (M.D. Pa. June 5, 2012) (concluding that clarification of the court's previous order was "unwarranted" where the order stated its determination "clearly and unambiguously"). Plaintiffs' motion is denied.[1]

### 2. Motion to Strike/Motion to Substitute

Plaintiffs' Motion to Strike addresses the fifth paragraph of a declaration submitted by Robert Kaemmerer, the Plan Administrator, concerning the dates on which the 1987 Plan was amended. (Doc. 252). The original paragraph in Kaemmerer's declaration stated as follows:

> Based upon company records, the 1987 Plan was amended effective January 1, 1995 (the "1995 Plan") and January 1, 2002 (the "2002 Plan). A corporate resolution adopted both plans in 1995 and 2002. The company applied for tax qualification of both Plans and the Internal Revenue Service issued tax qualification letters. I attach hereto as Exhibits "C," "D," "E," "F," "G," and "H" true and correct copies of the 1995 Plan, the 2002 Plan, the corporate resolution adopting the 1995 Plan, the corporate resolution adopting the 2002 Plan, and the tax two [sic] qualification letters for both plans respectively.

---

[1] Defendants request an award of the attorneys' fees that they incurred in responding to Plaintiffs' Motion to Clarify, contending that Plaintiffs' motion was the product of "willful bad faith." (Doc. 254 at p. 13). Although Plaintiffs' motion lacks merit, the Court does not find that it was designed to "multipl[y] the proceedings . . . unreasonably and vexaciously" or that it was the product of bad faith. *See* 28 U.S.C. § 1927. Consequently, Defendants' motion for a fee award is denied.

(Doc. 248 at ¶ 5). Plaintiffs suggest that this portion of Kaemmerer's declaration contains errors and contradicts factual findings already made by the Court. Defendants, in response, have offered (by way of their motion to substitute) to withdraw the offending paragraph and substitute a corrected version. (Doc. 260).

Courts have "considerable discretion in disposing of a motion to strike under Rule 12(f)." Dela Cruz v. Piccari Press, 521 F.Supp.2d 424, 428 (E.D. Pa. 2007). In the instant case, the assertions set forth in each version of Kaemmerer's declaration are immaterial to matters now pending before the Court. Each of the documents referenced in Kaemmerer's declaration is already part of the record in this case, and the Court is well aware of the import of those documents and its own previous factual findings. The Court simply has no reason, at this stage in the proceedings, to utilize or rely upon any representation contained in that portion of Kaemmerer's declaration. Consequently, both the motion to strike and the motion to substitute will be denied.

### 3. Class Composition Disputes

As noted above, the parties disagree as to whether the following five specific individuals should be included as members of the certified class. These individuals will be discussed in turn.

#### a. Lisa Feeny, Charles Fields, Raymond Gutshall and Stuart Upton

To qualify as a member of the certified class in the instant case, an individual must have vested under either the 1980 or 1987 version of the Plan. Cottillion, 2013 WL 5936368 at *10. In order to vest, an individual must have been credited with at least five years of vesting service at the time his or her employment terminated. *Id.* at *3. With respect to the four individuals discussed in this subsection, the lone issue in dispute is whether they vested under the 1987 Plan

(in which case they would be members of the certified class) or the 2002 Plan (in which case they would not).

By way of background, Feeny, Fields, Gutshall and Upton were hired between May 19, 1997, and December 8, 1997, at which time the 1987 Plan was still in effect. (Doc. 250-1). However, at the beginning of 2002 – around the time that those four individuals were approaching five years of vested service – the company was in the process of amending and restating the Plan. The 2002 Plan was eventually adopted with an effective date of January 1, 2002. (Doc 248-4). As of that date, Feeny, Fields, Gutshall and Upton had not yet accumulated five years of vested service.

In order to maintain the Plan's tax qualified status in light of several new legislative requirements (collectively referred to as "GUST"), Defendants submitted the amended Plan to the IRS seeking a determination that the Plan was GUST-compliant. (Doc. 143-10). Following the adoption of a handful of mandatory amendments, the Plan received a favorable determination letter from the IRS on March 4, 2003. (Doc. 145-4). A restated Plan with the required amendments was signed on March 18, 2003. *Id*.

During the time between the effective date of the new Plan (January 1, 2002) and the adoption of the final GUST-required amendments (March 18, 2003), Feeny, Fields, Gutshall and Upton each attained five years of vested service. Consequently, in an attempt to bring those individuals within the scope of the certified class, Plaintiffs contend that the 1987 Plan Document remained in effect until March 18, 2003. In support of this position, Plaintiffs cite Depenbrock v. Cigna Corp., 389 F.3d 78 (3rd Cir. 2004), wherein the plaintiff, a pension plan beneficiary, attacked a plan amendment that had been adopted in a manner contrary to the plan's written procedures at the time of its purported effective date. *Id*. at 79. During the interval

6

between the deficient attempt to adopt the amendment and the proper adoption of that amendment a year later, the plaintiff purportedly accrued rights under the older version of the plan. *Id*. at 80. The issue before the Court was whether the company's initial attempt to amend the plan was effective and, if not, whether the subsequent, proper adoption of the amendment had retroactive effect. *Id.* at 81. On review, the Court of Appeals for the Third Circuit resolved each of these issues in favor of the plaintiff, concluding that he was entitled to the benefit that he had accrued between the effective date of the amendment and the formal adoption of that amendment. Plaintiffs here contend that this holding supports the broader proposition that an amendment to prospectively eliminated or reduce benefits not yet accrued does not take effect until the *later of* the amendment's adoption date or effective date. (Doc. 247 at p. 3) (emphasis in original).

Plaintiffs' argument is misplaced. Unlike Depenbrock, Defendants were not attempting to correct a deficiency in the amendment process during the interval between January 1, 2002, and March 18, 2003. Rather, in accordance with well-established IRS procedures, Defendants submitted the amended Plan documents to the IRS for a determination as to the tax-qualified status of the Plan. Under the Internal Revenue Code, this procedure, and any subsequent amendments enacted in order to satisfy IRS requirements, explicitly relate back to the effective date of the original amendment. *See* 26 U.S.C. § 401(b) ("A stock bonus, pension, profit-sharing, or annuity plan shall be considered as satisfying [certain IRS] requirements . . . for the period beginning with the date on which it was put into effect . . ."); 26 C.F.R. § 1.401(b)-1 (providing a remedial period following the adoption of a plan amendment in which the plan may correct provisions that would otherwise affect the plan's tax-qualified status, and providing that those amendments relate back to the original effective date of the original amendment); Rev.

7

Proc. 2002-73 (allowing plans until September 30, 2003 to enact amendments to pre-approved plans in order to comply with GUST). There is no case law to support Plaintiffs' proposition that a plan amendment is not effective until the plan receives an IRS tax qualification letter certifying that the amended plan documents have been approved. See Faircloth v. Lundy Packing Co., 91 F.3d 648, 652-54 (4th Cir. 1996) (concluding that an IRS determination letter "does nothing to set up or manage" a plan); Murphy v. Verizon Comms., Inc., 2010 WL 4248845, *8 (N.D. Tex. Oct. 18, 2010) (concluding that a "determination letter from the IRS . . . does not establish or manage the plan" or "set out the parties' rights or obligations"). Consequently, the Court concludes that Feeny, Fields, Gutshall and Upton each vested under the 2002 Plan, rather than the 1987 Plan, and are not members of the certified class.

    **b. Gayle Munson**

In order to qualify for a benefit under the 1987 Plan, a beneficiary must be credited with five years of service with a minimum of 1,000 hours of service each year. With respect to Munson, Defendants have supplied a declaration from Kaemmerer, the Plan Administrator, indicating that Munson only reached the 1,000 hour minimum threshold in four of the years that she worked for United Refining. (Doc. 248). Defendants support Kaemmerer's determination with a worksheet indicating that the only years in which Munson worked at least 1,000 hours were 1985, 1986, 1987 and 1988. (Doc. 248-2). In light of this unrebutted evidence, the Court concludes that Munson did not vest under the 1987 Plan and does not meet the requirements of the certified class.

    **4. Restitution Disputes**

Plaintiffs challenge the restitution calculations performed by Defendants with respect to Gary Berti, Janice Moore, Dennis Tuttle, Homer Morrison and Stephen Widmer. The source of

this dispute primarily concerns an annuity contract that the Plan purchased from TransAmerica in 1984. For Plan participants who were employed at United Refining prior to October 1, 1984, a portion of their benefit under the Plan is funded from the TransAmerica annuity, while the remainder is funded from the general assets of the Plan. Plaintiffs speculate that Defendants have miscalculated the restitution amount owed to these individuals by failing to properly account for the portion of the benefit funded by the TransAmerica annuity, resulting in an artificially low unreduced benefit calculation. Specifically, Plaintiffs conjecture that Defendants "appear to have calculated the amount of unreduced benefit payments a class member should have received by dividing the benefit amount actually paid by the reduction factor (based on the class member's age at commencement) that was used to calculate that benefit." (Doc. 247 at p. 9). Plaintiffs supply sample calculations demonstrating that this formula would not result in an accurate unreduced benefits calculation if the value of the TransAmerica annuity is not properly accounted for. *Id*. at 9-10.

Defendants, in response, have supplied a declaration from Thomas DeFilippo, a principal of Towers Watson, the entity that currently serves as the enrolled actuary for the Plan. (Doc. 249). In his declaration, DeFilippo indicates that Plaintiffs' speculation as to the manner in which the TransAmerica annuity is accounted for in the Plan's benefits calculations is unfounded and incorrect. *Id*. at ¶ 2. To the contrary, DeFilippo explicitly states that Defendants' administrative practice has always been to offset the gross benefit amount by the amount of the TransAmerica annuity before calculating the value of the unreduced monthly benefit. *Id*. As such, Defendants are accurately capturing the value of that annuity and reflecting that value in their calculation of the unreduced benefit amount. *Id*. at ¶¶ 3-4. In light of DeFillipo's explanation and his inherent familiarity with the calculation methods commonly utilized by the

Plan to determine benefit amounts, the Court will adopt Defendants' calculations with respect to Berti, Moore, Tuttle, Morrison and Widmer.[2]

## II. ORDER

Upon consideration of Plaintiffs' Motion for Clarification (Doc. 251), Defendants' Motion for Attorneys' Fees (Doc. 254), Plaintiffs' Motion to Strike (Doc. 252), Defendants' Cross-Motion to Substitute Declaration (Doc. 260) and the parties' Joint Report concerning remedies (Doc. 247), the Court hereby ORDERS the following:

1. Plaintiffs' Motion for Clarification is DENIED.

2. Defendants' Motion for Attorneys' Fees is DENIED.

3. Plaintiffs' Motion to Strike is DENIED.

4. Defendants' Motion to Substitute is DENIED.

5. The certified class shall consist of the 193 individuals listed in Joint Exhibit 1 (and their beneficiaries under the Plan).

6. Judgment hereby is entered in favor of each of the individual certified class members listed in Joint Exhibit 2 in the amounts indicated.

7. Judgment hereby is entered in favor of Gary Berti, Janice Moore, Dennis Tuttle, Homer Morrison, and Stephen Widmer in the amounts set forth in the calculations provided by Defendants.

IT IS SO ORDERED.

March 24, 2014  s\Cathy Bissoon
Cathy Bissoon
United States District Judge

cc (via ECF email notification):
All counsel of record

---

[2] Plaintiffs additionally contend that Widmer is entitled to a large lump-sum back payment because he chose initially to commence receiving benefits at his early retirement age, only to change his mind upon being informed that his benefit would be actuarially reduced. However, this Court has already held that it would not award monetary relief for participants who elected not to commence receiving benefits. Cottillion, 2013 WL 5936368 at *8.