IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN COTTILLION, *et al.*, on behalf of themselves and all others similarly situated, ) ) ) Plaintiffs, ) ) v. ) ) UNITED REFINING COMPANY, *et al.*, ) ) Defendants. ) ) | Civil Action No. 09-140 Erie Judge Cathy Bissoon |

# MEMORANDUM AND ORDER

## I. MEMORANDUM

This matter is before the Court upon Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. 292). In addition, the following motions are pending: Plaintiffs' Motion to Strike Confidential Mediation Communications (Doc. 302); Plaintiffs' Motion to File Third Supplemental Declaration (Doc. 315); and Plaintiffs' Motion for an Accounting (Doc. 316). For the reasons that follow, Plaintiffs' Motion for Attorneys' Fees and Costs will be granted in part and denied in part; Plaintiffs' Motion to Strike will be denied as moot; Plaintiffs' Motion to Supplement will be granted; and Plaintiffs' Motion for Accounting will be denied.

## BACKGROUND

Plaintiffs John Cottillion and Beverly Eldridge (collectively, "Plaintiffs") initiated this action on June 12, 2009, alleging, *inter alia*, that Defendants had violated ERISA's anti-cutback provision, § 204(g), 29 U.S.C. § 1054(g)(2). (Doc. 1). On April 8, 2013, Judge Sean J. McLaughlin issued a Memorandum Opinion and Order granting summary judgment in favor of Plaintiffs on their anti-cutback claim. Cottillion v. United Refining Co., 2013 WL 1419705, *1 (W.D. Pa. Apr. 8, 2013). On November 5, 2013, this Court granted Plaintiffs' motion for class

certification; enjoined Defendants from actuarially reducing Plaintiffs' benefits; awarded damages to those who had been receiving too little; and dismissed as duplicative the remaining counts of the Complaint. Cottillion v. United Refining Co., 2013 WL 5936368, *10 (W.D. Pa. Nov. 5, 2013). Each of these rulings was affirmed on appeal. Cottillion v. United Refining Co., 781 F.3d 47 (3d Cir. 2015).

On May 13, 2015, Plaintiffs filed the pending Motion for Attorneys' Fees and Costs, seeking $2,163,413.56 in attorneys' fees and $55,386.24 in costs. (Doc. 292). On October 23, 2015, Plaintiffs supplemented that Motion and requested an additional $35,384.00 in attorneys' fees and $1,767.04 in costs. (Doc. 310-1). Defendants respond that the requested award is unwarranted and/or excessive. (Doc. 298).

**ANALYSIS**

    A.    **Motion for Attorneys' Fees and Costs**

Section 502(g)(1) of the Employee Retirement Income and Security Act ("ERISA") provides that a court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Courts assess the merits of a motion for attorney's fees pursuant to a three-step process. See Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 249 (2010). First, the court must determine whether the claimant has achieved "some degree of success on the merits." Id. Second, the court examines the five factors elucidated by the Court of Appeals for the Third Circuit in Ursic v. Bethlehem Mines in order to determine whether an award is appropriate. Ursic, 719 F.3d 670, 673 (3d Cir. 1983). Finally, if the Ursic factors support an award, the court must "review the attorney's fees and costs requested and limit them to a reasonable amount." Hardt, 560 U.S. at 249.

2

1.  *Ursic Factors*

In this case, there is no dispute that Plaintiffs achieved success on the merits by fully prevailing on their anti-cutback claim. The propriety of an award of attorney's fees thus depends on the Court's examination of the Ursic factors. Those factors are as follows: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing party would deter others under similar circumstances; (4) whether the party requesting attorney's fees seeks to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the losing party's position. Ursic, 719 F.2d at 673. Although these factors provide a useful framework, they are not to be construed rigidly. Fields v. Thompson Printing Co., 376 F.3d 259, 275 (3d Cir. 2004). In other words, "no one of these factors is decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address" in considering a fee award pursuant to Section 502(g)(1). Id.

The first Ursic factor considers the offending parties' culpability or bad faith. Ursic, 719 F.2d at 673. Bad faith "normally connotes an ulterior motive or sinister purpose." McPherson v. Emp. Pension Plan of Am. Re-Ins. Co., 33 F.3d 253, 256 (3d Cir. 1994). Culpability has been defined as follows:

> Culpable conduct is commonly understood to mean conduct that is blameable; censurable; . . . at fault; involving the breach of a legal duty or the commission of a fault . . . Such conduct normally involves something more than simple negligence . . . [On the other hand, it] implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose.

Id. at 256-57 (internal quotations and citations omitted). In other words, a party is said to have acted with culpability if its conduct "involves something more than simple negligence." McPherson, 33 F.3d at 257 (quoting Black's Law Dictionary (6th ed. 1990)).

This factor favors an award of attorneys' fees. The Third Circuit has characterized Defendants' reinterpretation of the applicable plan documents to reduce Plaintiffs' accrued retirement benefits as a "flat contradiction [of] the terms of the [applicable] Plans" that "no amount of deference could rescue." Cottillion, 781 F.3d at 55. This arbitrary and capricious amendment of the plain language of the Plan documents represented conduct beyond mere negligence. See, e.g., Battoni v. IBEW Local Union No. 102 Employee Pension Plan, 2009 WL 901021, at *2 (D.N.J. Apr. 2, 2009) (holding that the defendants "acted in a manner that exceeds that of mere negligence" by attempting to amend plan documents "to accomplish indirectly what could not be accomplished directly without violating the anti-cutback rule").

The second Ursic factor considers the ability of the offending part to satisfy a fee award. Ursic, 719 F.2d at 673. There is no dispute in this case that Defendants have the ability to pay an award. Consequently, this factor favors an award of fees. Berkoben v. Aetna Life Ins. Co., 2014 WL 3565959, at *11 (W.D. Pa. Jul. 18, 2014) ("Where the offending party's ability to pay is not disputed, the court of appeals has held that the second Ursic factor should be resolved in favor of an award of fees.") (citing Ellison v. Shenango Inc. Pension Bd., 956 F.2d 1268, 1277 (3d Cir. 1992)).

The third factor the Court must consider is the deterrent effect of an award of attorney's fees. McPherson, 33 F.3d at 258. This factor considers "whether an award of attorneys' fees would serve the objectives of ERISA by dissuading similar conduct in the future." Berkoben, 2014 WL 3565959, at *11 (quotation omitted). In McPherson, the Court of Appeals for the

4

Third Circuit opined that the objectives of ERISA are furthered "if fee awards are employed to deter behavior that falls short of bad faith conduct" because such awards "make [the] plan less likely and not so quick to deny benefits to other participants" in the future. McPherson, 33 F.3d at 258 (internal quotations and citations omitted). In this case, Defendants not only reinterpreted the Plan in a manner that violated ERISA, but proceeded to adjust and withhold vested benefits from Plan participants without providing a meaningful opportunity for participants to object or seek review. See Cottillion, 781 F.3d at 54-55 (noting that Defendants failed to provide any meaningful opportunity for participants to challenge the Plan's illegal reduction of their vested benefits). A fee award undoubtedly will serve as a deterrent for this type of culpable conduct in the future, as well as provide guidance in future ERISA cases. Berkoben, 2014 WL 3565959, at *12.

The fourth Ursic factor considers whether the Court's decision in this action will confer a benefit on other Plan members beyond the Plaintiffs. In other words, the court must consider "the benefit, if any, that is conferred on others by the court's judgment." McPherson, 33 F.3d at 256. In this case, the Plan participants who stand to directly benefit from the Court's decision were each members of the certified class, rendering this factor largely neutral.

The fifth and final Ursic factor weighs the relative merits of the parties' positions. "The question is not whether, but how much, this factor weighs in favor of the prevailing party." Viera v. Life Ins. Co. of North America, 2013 WL 3199091, at *4 (E.D. Pa. Jun. 25, 2013). Simply prevailing in the action is not enough to weigh this factor in favor of the Plaintiffs; rather, the Court must consider whether the losing party's position was substantially justified and taken in good faith, see Viera, 2013 WL 3199091, at *4-5, or unreasonable and unsupported by the record, see Berkoben, 2014 WL 3565959, at *14.

Significantly, neither this Court nor the Court of Appeals for the Third Circuit found this case to be a "close call." Cottillion, 781 F.3d at 55 (noting that "no amount of deference" could rescue Defendants' reinterpretation of the Plan "from its flat contradiction" with the plain meaning of the applicable documents). Moreover, as noted above, Defendants actions, although not in bad faith, went beyond mere negligence. Under such a circumstance, a fee award is appropriate. Berkoben, 2014 WL 3565959, at *14 (noting that the court's decision "was not a close question" and, therefore, "the fifth factor weighs in favor of an award of fees").

On balance, the Court finds that four of the five Ursic factors favor an award of fees, with the remaining factor being neutral. Accordingly, the Court concludes that an award of fees is appropriate. The Court must next consider whether the amount of the award requested is reasonable.

    2.    *Reasonableness of the Hourly Rate*

In an ERISA case, reasonable attorneys' fees are calculated using the lodestar approach. Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 310 (3d Cir. 2008). "Under the lodestar approach, a court determines the reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate." Id. The burden is on the party seeking attorneys' fees to establish the reasonableness of the rate claimed and the hours worked. Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 703 n. 5 (3d Cir. 2005).

In the instant case, Plaintiffs' counsel seek compensation at the following hourly rates: $575 for Tybe A. Brett, of counsel to the firm of Feinstein Doyle Payne & Kravec, LLC (FDPK); $495 for FDPK partner Joel R. Hurt; $625 for FDPK partner Ellen M. Doyle; $575 for FDPK partners William T. Payne and John Stember; $525 for FDPK partner Pamina Ewing;

$260 for associate Kathryn Bailey; $240 for associates Ruairi McDonnell and Sarah Martin; and $140 for law clerks. Brett Decl. (ECF No. 293-1) ¶ 3. Plaintiffs contend that these rates are commensurate with the prevailing national rates for experienced ERISA class action attorneys, citing affidavits from ERISA litigation attorneys located in Chicago and the District of Columbia, and an ERISA plan designer from Pittsburgh. Jordan Decl. (293-5); Bruce Decl. (Doc. 293-6); Watkins Decl. (293-7); Debofsky Decl. (293-8).

Defendants, in response, urge the Court to restrict the fee award to the prevailing rates in the forum of the litigation: Erie, Pennsylvania. Defendants have submitted an affidavit from a partner at a large Erie law firm opining that the prevailing rates in that forum range from $325-375 for senior partners, $285-300 for junior partners, $195 to 225 for experienced associates and $165-185 for junior associates. Lanzillo Aff. (Doc. 298-4) ¶¶ 14, 19.

As a general rule, the relevant community from which to determine prevailing rates is the forum in which the suit was filed. Interfaith Community, 426 F.3d at 703-705 (holding that, "in most cases, the relevant rate is the prevailing rate in the forum of the litigation" and that "district courts in the Third Circuit should award attorney fees based on the 'forum rate' rule"). There are two exceptions to this rule: when there is a demonstrated need for "the special expertise of counsel from a distant district," and when "local counsel are unwilling to handle the case." Interfaith Community, 426 F.3d at 705-06. Plaintiffs invoke both exceptions, arguing that a national rate is appropriate because the Erie market does not contain any law firms of sufficient size and experience to undertake such a complex case, and because several class members attempted to obtain local counsel to handle their claims but were unable to do so. Plan Participant Affidavits (Doc. 293-4).

7

With respect to the first exception, Plaintiffs cite the declarations of Attorneys Stephen R. Bruce, from Chicago, and Charles Watkins, from the District of Columbia, each of whom generally opines that "there are only a small number of firms in the United States with the knowledge and experience to successfully prosecute an ERISA class action." Bruce Decl. ¶ 9; Watkins Decl. ¶ 9 (noting that Plaintiffs' counsel is "among the small group of ERISA plaintiffs' class action lawyers in the United States"). However, neither Bruce nor Watkins have offered any opinion as to whether any such firms currently are practicing in Erie or Northwestern Pennsylvania. See Interfaith Community, 426 F.3d at 705 (noting that the mere fact that parties hired counsel from out of town is not relevant to determining whether counsel within the forum had the necessary expertise to handle the representation). Nor is there any evidence in the record to suggest that the issues and complexity of this litigation were such that they required specialized experience from outside the region. Id. at 706 (expressing "great difficulty" in accepting the notion that no attorney located within a discrete geographical area had the necessary expertise to handle a complex case). Indeed, Attorney Lanzillo represents that "[l]awyers in the Erie region have regularly represented parties in ERISA actions involving issues of comparable complexity to the issues in this case." Lanzillo Aff. ¶ 23. In the absence of any evidence to the contrary, Plaintiffs have failed to demonstrate the need for the special expertise of counsel from a distant district.

Plaintiffs' attempt to demonstrate that no local attorney was willing to handle this case is similarly unpersuasive. In support of this contention, Plaintiffs have supplied affidavits from three class members, each of whom states that they contacted several local law firms before eventually being referred to Plaintiffs' counsel. See Plan Participant Affidavits (Doc. 293-4). However, none of those affidavits provides any indication that the size and complexity of the

case was the basis for any of those rejections. See Interfaith Community, 426 F.3d at 706. Curiously, one of the affiants, Robert Wenom, does not even indicate that he attempted to contact any Erie law firms. Wenom Aff. (Doc. 293-4) ¶¶ 7-8. In short, there is insufficient evidence in the record to demonstrate that local counsel was unwilling to undertake the representation in question.[1]

In the absence of evidence to support either exception, the appropriate prevailing rate for an attorney fee award in this case is the "prevailing rate in the forum of the litigation." Interfaith Community, 426 F.3d at 705. Consequently, the Court will utilize the hourly rates supplied by Defendants. Those rates are as follows: $375/hour for Attorneys Brett, Doyle, Payne, Stember and Ewing; $325/hour for Attorney Hurt; $225 for Attorney Bailey; $185 for Attorneys McDonnell and Martin; and $90 for work performed by law clerks. Lanzillo Aff. ¶¶ 14, 19; Haisley v. Sedgwick Claims Mgmt. Servs., Inc., 2011 WL 4565494, at *10 (W.D. Pa. Sep. 29, 2011) (noting that "[c]aselaw from the Western District of Pennsylvania indicates that $90 is a reasonable hourly rate for paralegals and law clerks.").

### 3. Reasonableness of the Hours Worked

Having determined the appropriate hourly rate, the Court next must evaluate the number of hours expended. It is axiomatic that a prevailing party "may only recover for time reasonably expended and the Court must exclude time that was excessive, redundant or unnecessary." Babish v. Sedgwick Claims Mgmt. Servs., Inc., 2009 WL 2177234, at *5 (W.D. Pa. Jul. 22,

---

[1] Significantly, even if Plaintiff could establish either of the exceptions elucidated in Interfaith Community, a national rate would still be inappropriate. As noted in Interfaith Community, "when a party can show that it qualifies for either exception, the Court may award attorney fees based on prevailing rates *in the community in which the parties' attorneys practice*." Interfaith Community, 426 F.3d at 705. There is no evidence in the record at all concerning the prevailing forum rate for ERISA class action counsel of similar experience in the Pittsburgh market.

2009). Moreover, as counsel's experience and expertise increases, "there should be a corresponding decrease in the amount of time required to accomplish necessary tasks." Id. (citing Ursic, 719 F.2d at 677). Reductions to a fee award can only be made in response to specific objections from the opposing party. Interfaith Community, 426 F.3d at 711. Once an objection has been made, the burden shifts to the party seeking the fee to justify the size of the request. Id. The district court is afforded substantial discretion in determining the reasonableness of time expended by counsel. Hensley v. Eckerhart, 461 U.S. 424, 431 (1983).

In the instant case, Defendants raise a number of objections to Plaintiffs' fee request. Each will be discussed in turn.

First, Defendants broadly object to a fee award for any hours spent on tasks that Defendants believe did not directly contribute to Plaintiffs' success in this action. This includes time spent on unsuccessful mediation and settlement sessions; Plaintiffs' unsuccessful motion for additional remedies; Plaintiffs' unsuccessful defense of Defendants' motion to dismiss Counts I-III of the Amended Complaint; Plaintiffs' unsuccessful cross-appeal; Plaintiffs' unsuccessful motion to strike the testimony of Defendants' expert; and Plaintiffs' motion to compel production of documents. In support of their objection, Defendants cite the United States Supreme Court's pronouncement in Hensley that, "where the plaintiff achieve[s] only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." Hensley, 461 U.S. at 440.

Unlike in Hensley, however, the Plaintiffs in this case achieved full and complete relief, rather than limited success. Moreover, where a plaintiff relies on several alternative legal theories, a court will not reduce the amount of the fee simply because the plaintiff did not prevail on every theory. Brown v. City of Pittsburgh., 2010 WL 2207935, at *6 (W.D. Pa. May 27,

2010) ("Plaintiff's lack of success on her remaining claims does not have any significant impact because the remaining claims were intertwined with the successful claim."). Each of the activities cited by Defendants moved this action forward and ultimately contributed, in some fashion, to the Plaintiffs' successful outcome. Given the vigorous defense mounted by Defendants and the uncertainty of the outcome of the appeal, it was reasonable for Plaintiffs to fight to preserve their alternative claims for the duration of the case. The Court also observes that Plaintiffs at least partially prevailed on some of the motions cited by Defendants, such as the motion to compel. Thus, the Court will not categorically reduce the fee award based on the outcome of those motions. As discussed below, however, the Court will evaluate those entries individually to determine whether any hours spent were excessive.

Counsel has billed a total of 51.75 hours for a mediation held on November 1, 2010, and 58.1 hours for a settlement conference held in January, 2013. These hours include the attendance of two attorneys at each session, travel time for both attorneys, and other administrative tasks, such as calling and scheduling mediators. These hours are excessive and will be reduced by half. See, e.g., Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Ass'n Trust v. Castellano, -- F.3d --, 2016 WL 540794, at *6-7 (E.D. Pa. Feb. 10, 2016) (applying reduction under materially analogous circumstances).

Plaintiffs' counsel billed a total of 214.65 hours for work on the motion to clarify remedies (Doc. 203). This motion featured a 27-page brief in support and a handful of exhibits, none of which are voluminous. Many of the issues raised in that motion were duplicative of arguments already made in the course of the parties' summary judgment briefing. As noted in Ursic, a "fee applicant cannot demand a high hourly rate – which is based on his or her experience, reputation, and presumed familiarity with applicable law – and then run up an

11

inordinate amount of time researching that same law." Ursic, 719 F.2d at 677. The hours spent on this motion are excessive and will be reduced by half.

Plaintiffs' counsel billed a total of 133.60 hours for a motion to strike expert testimony (Doc. 167) that was supported by an 18 page brief. The issues raised in the motion were not complex and primarily focused on legal argument. The Court will reduce the fee sought for work performed on this motion by half.

As noted in Defendants' response brief (Doc. 298), Plaintiffs' counsel billed a total of 253 hours for a motion for class certification (Doc. 89), followed by an additional 61.3 hours to renew that motion and file a second motion for class certification (Doc. 191). The briefs supporting these motions are each over 30 pages, and voluminous exhibits are attached. However, as much of the brief consists of legal boilerplate and factual summaries that somewhat duplicate other filings in this action, over 300 hours devoted to these tasks is excessive. The fees for these motions will be reduced by half.

The same is true of Plaintiffs' motion for summary judgment (Doc. 112) and renewed motion for summary judgment (Doc. 138). Plaintiffs' counsel billed approximately 583.2 hours for work related to these motions, each of which was supported by a 30 page brief and numerous exhibits. The number of hours devoted to those motions is excessive given counsels' claimed experience in ERISA litigation. See Castellano, 2016 WL 540794, at *7 (noting that 304.2 hours for the preparation, research, revision, review, and editing of 172 pages of undisputed facts and a memorandum in support of a supplemental summary judgment motion was an "egregious" instance of excessive billing). The fee award for these tasks – including the filing of reply briefs – will be reduced by half.

Finally, Plaintiffs' counsel spent approximately 424.45 hours on appellate issues, including responses to Defendants' appeal and Plaintiffs' cross-appeal. Much of their appellate work focused on the same issues that Plaintiffs' counsel already researched and reviewed in the context of summary judgment and other motions. These hours are excessive, and will be reduced by half. See Chalmers v. City of Los Angeles, 796 F.2d 1205, 1214 (9th Cir. 1986) (reducing appellate fees where trial counsel represented the plaintiff on appeal; counsel should have been "intimately familiar" with the case at the point).[2]

### 4. *Reasonableness of Costs*

Section 502(g)(1) of ERISA provides that a court "in its discretion may allow reasonable . . . costs of action to either party." Defendants challenge the reasonableness of the costs sought by Plaintiffs as excessive and duplicative. However, each of the costs sought by Plaintiffs appears to be reasonable and in line with the types of costs attorneys ordinarily pass on to their clients. Berkoben, 2014 WL 3565959, at *21-22 (noting that "costs" include those costs ordinarily taxable under 28 U.S.C. § 1920, such as filing fees, service fees, witness fees, transcripts, printing, and photocopying, as well as "other expenses attorneys customarily charge to their clients"). The Court will award those costs without reduction.

In light of the overall length and breadth of the fee petition, and the sheer volume of the billable hours addressed in Plaintiffs' Motion, it is the view of the Court that the final calculation of any fee award would best be performed by the parties. Consistent with the rulings herein, the Court will instruct the parties to perform those calculations and submit proposed orders for final review and approval.

---

[2] It should be observed and noted that the Court believes that its analysis here results in an attorneys' fees award that can best be described as generous.

### B. <u>Miscellaneous Orders</u>

In addition to the fee petition, three other Motions are pending, none of which require extensive discussion. Plaintiffs' Motion to Strike Confidential Mediation Communications (Doc. 302) will be denied as moot, as the Court already has rejected Defendants' suggestion that Plaintiffs unreasonably refused to settle this action.

Plaintiffs' Motion to File Third Supplemental Declaration (Doc. 315) will be granted. The declaration serves only to correct the given name of class-member, previously misidentified, and, in any event, Plaintiffs' submission has no direct bearing on the issues resolved herein.

Finally, Plaintiffs' Motion for an Accounting (Doc. 316) with respect to the status of the implementation of the remedies awarded in this action will be denied. On April 28, 2016, Plaintiffs informed the Court that portions of the Motion already had been resolved without need for judicial intervention. (Doc. 329). Counsel are directed to continue to confer and cooperate in the same manner in order to ensure that the remedies awarded by the Court's November 5, 2013 Order are fully implemented.

Consistent with the foregoing, the Court hereby enters the following:

### II. <u>ORDER</u>

It is ordered that:

A. Plaintiffs' Motion for Attorneys' Fees and Costs (**Doc. 292**) is **GRANTED IN PART AND DENIED IN PART**, consistent with the analyses above.

B. **<u>On or before July 14, 2016</u>**, the parties shall jointly file a proposed, signature-ready order awarding attorneys' fees in the correct amount, consistent with the analyses and guidelines set forth herein. If disputes exist, the parties may attach supporting materials, including short explanation(s) regarding any underlying calculations and/or methodologies. <u>The parties' submissions shall not contain</u>

<u>further argument regarding the matters already decided</u>, although the Court now expressly holds that the submissions are made without prejudice to any arguments or positions that may be presented on appeal. In the event of a dispute, the Court will review the parties' submissions and, without further analysis, enter a proposed order that is most compliant, fair and reasonable.[3]

C. Plaintiffs' Motion to Strike Confidential Mediation Communications (**Doc. 302**) is **DENIED AS MOOT**.

D. Plaintiffs' Motion to File Third Supplemental Declaration (**Doc. 315**) is **GRANTED**.

E. Plaintiffs' Motion for an Accounting (**Doc. 316**) is **DENIED**.[4]

IT IS SO ORDERED.

June 30, 2016                                        s\Cathy Bissoon
                                                     Cathy Bissoon
                                                     United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

[3] To be clear, Plaintiffs shall not include in their proposal any costs or fees associated with their compliance with this Order.

[4] The Court is confident that, with good faith, reasonable cooperation, the remaining issues in this Motion can be amicably resolved. Thus, a renewed motion on this matter is not anticipated. Should either side determine that a motion must be filed, however, the parties are directed to first comply with Section III.B.3 of the undersigned's Practices & Procedures. *See* web page at http://www.pawd.uscourts.gov/sites/pawd/files/bissoon_pp.pdf) (requiring parties to request telephonic conference before proceeding to formal motions practice).